[No. 3422.]

Tony Thuston *v.* The State.

1. Jury Law — Special Venire — Practice.— In the selection of jurors from a special venire it was ascertained that all the veniremen were in court, but that five of them were jurors in another felony case. As the names of these five were called, the defense demanded their production in the jury box, to be passed upon. For the reason that the selection of any one of the five would break up the jury in the other case, the court overruled the demand, and, over objection by the defense, ordered the sheriff to summon twenty talesmen, and required the defense to proceed with the selection from them of jurors to complete the panel. Defendant's peremptory chal-

lenges were exhausted before the panel was filled.  In explanation the trial judge states that he was not asked to delay this case until the jury in the other case should return a verdict, and that the jury in the present case was completed and sworn before the jury in the other case did return their verdict.  *Held*, that the rulings of the trial court were erroneous.  The case which the five veniremen were already trying being a felony case, the court should have postponed the impaneling of the jury in the present case until the said five veniremen were legally discharged from further consideration of the other case.  No right of the defendant was forfeited or waived by his failure to ask the postponement, and the court was not authorized to deprive him by its own action of his right to have the special veniremen subjected to challenge or acceptance *seriatim* as their names were called from the list.  Note in the opinion the collocation of statutory provisions and judicial decisions bearing upon the questions discussed.

2.  CONFESSIONS — CHARGE OF THE COURT.— Though true as a general rule that the confessions of a defendant should be received with caution, an instruction to the jury to that effect would be a charge on the weight of evidence, in contravention of article 677 of the Code of Criminal Procedure, which prohibits any instruction on the weight of evidence.

APPEAL from the District Court of Fannin.    Tried below before the Hon. D. H. Scott.

Appellant was indicted by the grand jury of Fannin county, on the 24th day of February, 1883, for the murder of Charley Smith, in said county, on the 2d day of October, 1882.   Upon trial he was convicted of murder in the second degree, and was awarded a term of fifteen years in the penitentiary as punishment.

Bettie Maloney was the first witness for the State.   She testified that she was acquainted with the defendant, whom she identified in court, and knew the deceased in his life-time.   She witnessed the killing of Charley Smith, the deceased, whose wife she was at the time.    The killing occurred in Fannin county, Texas, on the 2d day of October, 1882.   On that date the defendant and his wife, and the witness and her husband, lived in the same house, on the farm of William Floyd.   The house in which they lived was a box structure of two rooms, with four doors, one in the north and one in the side of each room.   The rooms in size were sixteen feet square, with a stack chimney between them.   The defendant occupied the room directly east of the room occupied by the witness and her husband.   The defendant and the deceased went to the town of Honey Grove on the day of the homicide.   Witness saw neither the defendant nor the deceased again that day.   The deceased was the first to get home, arriving some time after night.   He took his seat in his room, and employed himself playing upon his violin.   The defendant reached home between 8 and 9 o'clock

that night.   Defendant spoke from his room (between which and deceased's room there was no door or other opening), and asked why the deceased left Honey Grove without waiting for him, as he had agreed to do.   Deceased replied that he did not wait for defendant because he thought that the defendant had gone by somebody's house for his, defendant's, wife, Lucy.   To this the defendant replied: " You are a liar."   The deceased retorted: "You are a G——d d——d liar and a son-of-a-b——h."   Defendant replied: " You can't come out of doors and say that."   About this time the defendant or some one else stepped out of the defendant's north door. Deceased at about the same time stepped to his front door, kicked a plank loose, and jerked the door open with his right hand.   At the same instant of time, some one out of doors walked into defendant's room, and immediately a gun fired from the direction of the defendant's north door, and the deceased fell, with his head near the fire-place.   Witness at the time was standing in the northeast corner of her room, ironing clothes, and the flash from the gun blinded her.   The deceased's door, when the gun fired, was open wide enough to admit a man's head, and the deceased was standing inside of his room.   The doors in each room stood about central. Deceased was shot in the breast, and lived but a few minutes.

On her cross-examination the witness stated that the deceased usually kept his gun in a rack over and behind the chimney.   On the morning of the day of the homicide he took it down for the purpose of going hunting.   The witness did not know whether or not he had replaced it in the rack.   He had the gun in his hand when he went to the door just before he was shot.   When he opened the door, which opened to the left or west, he held the breach of his gun under his left arm, the muzzle pointing downwards.   He held his violin in his right hand at the same time.   After he was shot and fell, the witness found his violin bow, on which there was blood, lying on the floor near the deceased.   The first the witness saw of the deceased's gun, after he was shot, it was lying on the bed, which stood in the northwest corner of the room. He, deceased, put the gun on the bed that morning when he came home from hunting, and the witness did not know whether or not it had been moved from the bed since he so placed it there.

Wash Moore was the next witness for the State.   He testified that he lived about two hundred yards from the house in which the defendant shot the deceased.   He heard the report of the fatal shot, and immediately went to the scene of the shooting.   He found the north door of the deceased's room standing open.   Deceased was

lying dead in the middle of the floor. A shot-gun was lying on the bed in the northwest corner of the room. The wife of the deceased and a violin were also lying on that bed.

Cross-examined, the witness stated that the deceased was shot through the breast, a little to the left of the center. The shot did not appear to go straight into the body, but, slanting somewhat, ranged to the left. The wound made but one large hole.

Constable William Smith was the next witness for the State. He testified that he was absent from home at the time of the homicide, and did not return until the night of the next day after it occurred. Hearing of the homicide, he started in pursuit of the defendant. When about one mile north from the town of Honey Grove, he encountered the defendant as the latter was about to come into the public road. He arrested defendant, took him behind him on his horse, and started with him to jail. Defendant, *en route*, seemed much inclined to talk, when witness warned him that anything he might say about the homicide would be used against him, and that he need say nothing unless he wanted to. After being thus warned, the defendant said that he had been given away and was then *en route* to surrender.

Cross-examined, the witness said that he was perfectly well known to the defendant. The defendant could have seen, and doubtless did see, the witness and his party before he surrendered, and made no effort whatever to escape or evade arrest. Witness further stated that, when arrested, the defendant said that he had come from the house of one Peter Smith, west of Honey Grove. There was no public road from Smith's house to the point where the defendant was captured. The road from Smith's to Honey Grove was distant a mile and a half east from the point of capture.

Hamp Stephens was the next witness for the State. He testified that he lived about a half mile distant from the house of the defendant. Between 9 and 10 o'clock on the night of the homicide, the defendant came to the witness's house and told witness that he had killed Charley Smith, and that he was then on his way to his mother's house, near Honey Grove, to get her to go to Smith's and see about it. He requested witness to go to Smith's; which the witness did.

Cross-examined, the witness said that defendant told him on the same occasion that he shot Smith in self-defense; that Smith came to his door and opened it, having in his hands at the time a shot-gun in a raised position, but not presented at him, the defendant. When witness went to the house of Smith, he found Smith on the

floor, dead. The door of the room was standing open. A shot-gun lay on the bed. No person save Wash Moore and the wife of the deceased were in the room when witness arrived. The State closed.

Lewis Mulliken was the single witness for the defense. He testified that he saw the defendant and the deceased in the town of Honey Grove, on the morning of the day of the homicide. They came from the railroad depot towards the witness's business place. As they approached the witness, he heard the deceased quarreling at and abusing defendant, asserting that he could whip defendant, and challenging him to fight. Defendant declined to fight in Honey Grove, as he did not want to pay a fine. Deceased replied that defendant would have to fight before morning,— that he would "get" defendant before morning.

The motion for new trial raised, among others, the questions discussed in the opinion.

*Taylor & Galloway*, for the appellant. The defendant is entitled to the names served on him from which to select a jury, and the court has no authority to order talesmen when there are any of the special venire present not passed upon. (Code Crim. Proc., arts. 618–640; *Bates* v. *The State*, 19 Texas, 124; *Robles* v. *The State*, 5 Texas Ct. App., 355; *Foster* v. *The State*, 8 Texas Ct. App., 257.) The court has no authority to excuse a juror from the venire, after the name has been furnished the defendant.

We submit that the explanation of the district judge, to the effect that the jurors not passed upon were impaneled on another jury, and had retired to consider their verdict, should not deprive the defendant of his right in a capital case. The court says that counsel did not ask that the case be postponed until after the deliberation of the jury. Yet the counsel did do all in their power by objecting then and there, when the court had the power and could have postponed the case of its own motion, or could have taken the jurors from the other jury even though it broke up the jury in that case. The court, however, did not see proper to take either of these courses, but forced the selection of a jury from talesmen when the regular jury were present. If such an exception is made to the jury law, by judicial power, there is but little necessity of ordering a special venire. To make the case as strong as it could be, suppose the court orders a venire of thirty-six men; twenty-four are sworn and copy furnished the defendant, according to law, and when the case is called for trial, the twenty-four jurors are impaneled on two other juries and out deliberating, would the district court have power

and authority, over the protest of defendant, to order talesmen from which to select a jury? It seems to me the policy of the jury law in capital cases answers the question in the negative. Then, if the court could not exercise the power in such a case, it certainly could not do a lesser wrong, which might be as detrimental to the interest of the defendant.

The fifth assignment of errors is as follows: The court erred in not charging on the effect of confessions. The jury should receive the confessions of defendant with great caution, and should have been so instructed by the court. (*Guy* v. *The State*, 2 Texas Ct. App., 128; *Walker* v. *The State*, 2 Texas Ct. App., 326; *Riley* v. *The State*, 4 Texas Ct. App., 538. See, also, *Hauck* v. *The State*, 1 Texas Ct. App., 357.) When a confession is drawn out by the State, and is reasonable, the State is bound by it, unless it is proven to be false. (*Gordon* v. *The State*, 26 Texas, 210; *Gordon* v. *The State*, 33 Texas, 696.)

*J. H. Burts*, Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE. Only one bill of exceptions appears in the record, and that was saved to the ruling of the court with regard to the impaneling of the jury to try the case. It appears that a special venire of forty-eight jurors had been ordered and summoned, and we presume that a copy of the list had been furnished the defendant, though the bill does not so state. It alleges, however, that the special veniremen were all present in the court-house, and that all were qualified jurors. When the names of the special venire were being called for the purpose of selecting the jury, five of the parties whose names appeared on the list failed to answer, and the court refused to have them brought into the jury box to be passed upon as their names were called in the order in which they stood, though the defendant requested it. The reason given by the court for not having them brought in and passed upon was that each of the five parties named on said special venire were, at the time, upon a jury in another felony case, upon which they had been impaneled and which they were trying before the present case was called for trial, and that they were, at the time their names were called, locked up in the jury room, as jurors on the other felony case, considering of their verdict in said case. That, to call them out and have them passed upon in this case would break up the other jury, should any one of them be selected upon this one. Out of the remaining names on the special venire only nine jurors were

selected when the list was exhausted, and the court, over defendant's objection, ordered the sheriff to summon twenty talesmen from whom the defendant was required to fill up the jury, and defendant's challenges were all exhausted before the panel was complete.

In his explanation to the bill of exceptions, the learned judge states that he was not asked to delay the case until the jury in the other case had found their verdict and reported the same; and he states that the jury in the other case upon which these five jurors were, did not report their verdict in that case until after the jury in this case was completed and sworn.

Article 617, Code Criminal Procedure, provides that no defendant in a capital case shall be brought to trial until he has had one day's service of the copy of the names of the persons summoned under a special *venire facias;* and article 640, Code Criminal Procedure, provides that, in selecting the jury from the persons summoned, the names of such persons shall be called in the order in which they appear upon the list furnished the defendant. (*Clark* v. *The State*, 8 Texas Ct. App., 350.)

The court has no right, in advance of the selection of the jury from the special venire, to excuse any of the jurors so summoned, and they cannot be excused until they have appeared at the time and place specified in the *venire facias*, and until their names are called and tested in the order in which their names appear on the *venire facias*. (*Robles* v. *The State*, 5 Texas Ct. App., 346.) Of course where they do not appear or are not present when their names are first called, the case is not to be unreasonably delayed on account of their absence, but the remaining names may be called and passed upon, and when the absentees do appear before the jury is completed, they may be tried and impaneled, if not challenged, as would have been the case in the first instance. (Code Crim. Proc., art. 640.) And if upon the call of the list a juror is absent, and it be made to appear satisfactorily that his absence is from sickness or other unavoidable cause, the court may undoubtedly excuse his attendance. But, as stated above, the court cannot excuse in any instance, if not present, until his name has been called, nor then, unless the cause is unavoidable or the defendant consents. (Code Crim. Proc., art. 621; *Hill* v. *The State*, 10 Texas Ct. App., 618; *Foster* v. *The State*, 8 Texas Ct. App., 249.) At the request of either party an attachment may issue for any person summoned who is not present, to have him brought forthwith before the court. (Code Crim. Proc., art. 618.) When, however, from any cause there

is a failure to select a jury from those who have been summoned, a new venire may be ordered by the court (Code Crim. Proc., art. 612), and though an attachment might be out for some of the original veniremen, that should not unreasonably delay the completion of the jury out of new talesmen summoned.

The object of the law in requiring a copy of the names of the original special venire to be served one day before trial upon the defendant is to enable him the better to exercise his right of challenge upon those summoned. This right, as said by Wheeler, J., in *Bates* v. *The State*, which was a case presenting almost the identical question we are considering, "is a valuable right which is not to be denied the accused. It is true it may be defeated, in whole or in part, by the non-attendance of the jurors; and, doubtless, after their attendance, the court may discharge one or more of them for cause. But it will be readily admitted that the cause which will excuse ought not to be occasioned by the action of the court in derogation of the prisoner's right, but by something over which the court had no control; as the sickness of the juror, or a member of his family, or some such matter. For such causes the court might discharge a juror, though the effect should be to prevent the prisoner from selecting him upon the jury. But surely the court ought not, by its own action, to place the jurors in a situation which itself would constitute an occasion for afterwards discharging them and denying the prisoner the right of selecting his jury from the list furnished him." (19 Texas, 123.)

The impaneling of these five jurors upon the jury of another felony trial, after they had been summoned in this case, was the action of the court itself, and was not in any sense a casualty over which the court had no control. As further said in Bates's case, *supra:* "The jurors summoned for this case ought not to have been charged with the trial of another until regularly discharged from this; and if, from inadvertence, they had been impaneled for the trial of another case, they should, when called in this, have been at once discharged from the consideration of the other case, or the trial should have been postponed until they were discharged." The case which these jurors were already trying being a felony case, the proper practice would have been, in this instance, to have postponed the impaneling of the jury in this case until they were legally discharged from the consideration of that. The right of the defendant in the premises was not compromised or waived by his failure to ask a postponement of the trial.

The charge of the court was not excepted to, nor were any addi-

tional instructions in behalf of defendant requested.    In the absence of special requested instructions, it appears to us to have presented the case fully for the consideration of the jury.    Appellant in his brief complains that there was error of omission in the charge, in that it failed to instruct the jury that they "should receive the confessions of the defendant with great caution."    Whilst the rule seems to be a general one that the confessions of the defendant should be received with caution (*Gay* v. *The State*, 2 Texas Ct. App., 128; *Walker* v. *The State*, 2 Texas Ct. App., 326), yet, to have charged the jury to that effect in the manner indicated by appellant's counsel, would have been a charge directly upon the weight of evidence, and in contravention of the statute.

For the error of the court with regard to the impaneling of the jury, as above shown, the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

[Opinion delivered April 18, 1885.]